UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NATALIE O.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-00292-MJD-JPH |
| | ) |
| FRANK BISIGNANO, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Natalie O. requests judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB and SSI in August 2021, alleging an onset of disability as of November 11, 2016. [Dkt. 11-2 at 11.] Her application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Kevin Walker ("ALJ") on December 1, 2023. *Id.* On January 11, 2024, the ALJ determined that Claimant was not disabled. *Id.* at 11-24. The Appeals Council denied Claimant's request for review on December

---

[1] To protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

20, 2024. *Id.* at 2-4. Claimant then timely filed her Complaint on February 13, 2025, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standard

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M. [v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record").  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).  While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872.  That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it.  *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025).  This is the standard the Court will apply in this case.

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of November 11, 2016.  [Dkt. 11-2 at 13.]  At step two, the ALJ found that Claimant had the following severe impairments:  "multiple sclerosis; optic neuritis; obesity; anxiety; depression; posttraumatic stress disorder; attention deficit hyperactivity disorder; and polysubstance abuse; in remission." *Id.* at 14.  At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time

3

period.  *Id.*  The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is able, on a sustained basis, to understand, carry out, and remember simple instructions, make judgments commensurate with functions of simple repetitive tasks, respond appropriately to brief supervision and interactions with coworkers and work situations (where "brief" is defined as up to 1/3 of the duty day), and deal with changes in a routine work setting.

*Id.* 15-16.

At step four, the ALJ found that Claimant was capable of performing past relevant work as a housekeeping cleaner (DOT 323.687-014).  *Id.* at 23-24.  Accordingly, the ALJ found that Claimant was not disabled.  *Id.* at 24.

## IV. Discussion

Claimant raises two issues in her Brief in Support of Judicial Review: (1) whether the ALJ erred by failing to recognize her agoraphobia with panic disorder as a medically determinable impairment and consequently failed to incorporate the limitations arising from that impairment into the step three analysis and the RFC analysis; and (2) whether the ALJ erred in conducting the subjective symptom analysis.  [Dkt. 13 at 4.]

The Court will address each of Claimant's arguments, but in a somewhat different order than they were presented by Claimant in her brief.  First, the Court will consider whether the ALJ committed a step two error that requires remand.  Second, the Court will consider whether the ALJ made a step three error that requires remand.  Third, the Court will consider whether the ALJ erred in conducting the subjective symptom analysis.  Fourth, the Court will consider whether the ALJ erred in formulating Claimant's RFC.

4

### A. Step Two – Medically Determinable Impairments

Claimant's argument on this issue proceeds in two parts. First, she argues that the ALJ erred by failing to recognize her agoraphobia with panic disorder as a medically determinable impairments at step two. [Dkt. 13 at 13.] Second, she argues that this failure requires remand "because the scope and severity of the impairments evaluated at step two can impact the ALJ's equivalence determination at step three and his RFC determination." *Id.*

The Court does not agree with Claimant's argument that a step two error "generally" requires remand. [Dkt. 13 at 13.] In this case, the Court agrees that the ALJ should have made a finding as to whether Claimant's agoraphobia with panic disorder was a medically determinable severe or non-severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). However, an ALJ's failure to recognize a medically determinable impairment at step two does not necessarily or presumptively require remand. 20 C.F.R. § 404.1523(c); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). That is because "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process . . . . Therefore, the step two determination of severity is 'merely a threshold requirement.'" *Castile*, 617 F.3d at 926-27 (quoting *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *see also Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015). When a claimant has multiple impairments, the ALJ must consider the combined effects of those impairments throughout the disability determination process "without regard to whether any such impairment, if considered separately, would be of sufficient severity" at step two. 20 C.F.R. § 404.1523(c). Thus, the question on judicial review is not merely whether there was a step two error, but instead whether that step two error caused the ALJ to err in the remaining steps of the evaluative process as well—either by not proceeding beyond step two, or by failing to consider the limitations arising

5

from a particular medically determinable impairment or combination of impairments at a later step in the evaluative process.  See *Castile,* 617 F.3d at 926-27 (no remand where the ALJ did not recognize claimant's chronic fatigue syndrome as a severe impairment but nevertheless considered the limiting effects of her chronic fatigue syndrome in assessing her RFC); *Hickman,* 187 F.3d at 688 ("it is quite apparent that severity is merely a threshold requirement, for not all severe cases will (either medically or functionally) meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1").

In this case, Claimant has not shown that a step two error requires remand.  Assuming *arguendo* that the ALJ made a step two error, that error would not lead to remand in this case because the ALJ considered the limiting effects of Claimant's agoraphobia with panic disorder later in the evaluative process.  See, e.g., [Dkt. 11-2 at 15] (at step three, the ALJ noted "claimant has reported panic attacks in public . . . She testified that she often is barely able to make it out of bed"); *id.* at 19 (in assessing Claimant's RFC, the ALJ noted that Claimant "was diagnosed with major depressive disorder, agoraphobia with panic disorder, and PTSD").[3]

Claimant relies on three district court orders from within the Seventh Circuit for the proposition that a step two error "generally" warrants remand "because the scope and severity of the impairments evaluated at step two can impact the ALJ's equivalence determination at step three and his RFC determination."  [Dkt. 13 at 13] (citing *Ridinger v. Astrue,* 589 F. Supp. 2d

---

[3] *See also* [Dkt. 11-2 at 15 ("reported being more withdrawn due to her impairments"; "described panic attacks when leaving the house"; "reported panic attacks in public"); 16 ("not able to work on a full-time basis due to primarily to panic attacks and symptoms of multiple sclerosis. She testified that the combination of these impairments prevents her from leaving the house or doing anything."; "estimated that she has panic attacks once or twice a day, or any time she tries to leave her apartment."); 19 ("diagnosed with major depressive disorder, agoraphobia with panic disorder, and PTSD. . . . "); 20 ("reported symptoms including severe anxiety making it difficult to leave her home and preventing her from working"; "reported extremely minimal social interactions"; "her panic and anxiety had her stuck in her house").

995, 1004 (N.D. Ill. 2008); *Olson v. Colvin*, 2014 WL 4792117 at *5 (W.D. Wis. Sept. 24, 2014); *Staley v. Colvin*, 2016 WL 7447734 at *3 (S.D. Ind. Dec. 28, 2016)).  While district court orders may be persuasive, the Court observes that none of the cases cited by Claimant addresses the binding precedent set forth by the Seventh Circuit Court of Appeals in *Castile*.  Further, two of the cases cited by Claimant are factually distinguishable from the present case and from *Castile*, because, unlike here, in those cases the ALJ failed to consider the limiting effects of the impairments that were omitted from consideration at step two during later steps in the evaluative process.  *Seem Ridinger*, 589 F. Supp at 1004  ("[n]owhere did the ALJ explicitly consider the combined effect of all of Ridinger's impairments"); *Staley*, 2016 WL 7447734 at *2  ("[t]he error is not harmless because the ALJ did not rely on the medical opinions documenting [claimant's] obesity when assessing her limitations in the RFC").  Therefore, *Olson* and *Staley* are consistent with the holding in *Castile* even though those orders do not expressly cite *Castile*, and the persuasive effect of these three district court orders in support of Claimant's argument is minimal.

    Claimant argues that the ALJ's consideration of the limiting effects of her agoraphobia with panic disorder at step three and in assessing her RFC were flawed.  The Court will address those arguments more squarely in Sections IV-B and IV-D *infra*.  For purposes of the issue addressed in the present Section, the Court simply rules that any error the ALJ made in failing to identify Claimant's agoraphobia and related panic disorder at step two was harmless because the ALJ considered the limiting effects of those impairments later in the evaluative process, specifically at step three and in assessing Claimant's RFC.  Claimant has not shown that the ALJ's oversight in failing to include agoraphobia and panic disorder in his list of medically determinable impairments altered his analysis in those later steps.

### B. Step 3 – Listings

At step three, the ALJ determines whether the claimant's impairments are "severe enough" to be presumptively disabling—that is, so severe that they prevent a person from doing any gainful activity and make further inquiry unnecessary. 20 C.F.R. § 404.1525(a); *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020). An impairment is presumptively disabling if it is listed in the relevant regulations' appendix or if it is "medically equivalent" to a listing. 20 C.F.R. §§ 404.1525(a), 404.1526(a).

In this case, the ALJ considered whether Claimant's mental impairments, singly or in combination, met or medically equaled listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma and stressor-related disorders). [Dkt. 11-2 at 14.] Each of these listings includes three categories of criteria: "paragraph A criteria," "paragraph B criteria," and "paragraph C criteria." 20 C.F.R. § 404, Subpt. P, App. 1, 12.00 (Mental Disorders). The paragraph B criteria include four areas of mental functioning: the ability to (1) understand, remember, or apply information; (2) interact with others; and (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* "To satisfy the paragraph B criteria, the [claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* Here, the ALJ found that Claimant had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentration, persistence, and pace; and a moderate limitation in adapting or managing herself. [Dkt. 11-2 at 14-15.] Accordingly, he found that Claimant's mental impairments, singly and in combination, did not meet or medically equal any of the listings. *Id.* at 15.

8

Claimant's step three argument is sparse and largely undeveloped. The only paragraph B finding she expressly challenges is her limitation interacting with others. [Dkt. 13 at 16-17.] Although she challenges the finding that she has a "mild" limitation in this area, she does not argue that the evidence supports a finding of extreme limitation, which she would need to show to prevail at step three given that she does not challenge the other three paragraph B findings. 20 C.F.R. § 404, Subpt. P, App. 1, 12.00 (Mental Disorders). Indeed, she does not even set forth the SSA's administrative legal standard for an extreme limitation anywhere in her briefs, and the Court will not do so here on her behalf. *See generally* [Dkts. 13, 16]; *see also Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2002) ("[I]t is not this Court's responsibility to research and construct the Parties' arguments") (cleaned up).

Further, while Claimant argues that the ALJ should have articulated a more robust analysis at step three and perhaps included a more detailed summary of the medical evidence with respect to her agoraphobia with panic disorder, [Dkt. 13 at 12-13], the Court notes that the articulation requirement for step three is not high and will be affirmed so long as the analysis is more than perfunctory. *See Jeske*, 955 F.3d at 588 (explaining that an ALJ must only provide "more than a perfunctory analysis" at step three); *Curvin*, 778 F.3d at 650 (clarifying that the ALJ's decision must be read "as a whole" and that "[w]e do not discount [an ALJ's step three analysis] simply because it appears elsewhere in the decision"). Here, the ALJ noted Claimant's agoraphobia and related panic disorder at step three and provided additional analysis of her medical records with respect to these conditions later in the evaluative process in assessing her RFC. [Dkt. 11-2 at 15, 19-20.]; *see also Curvin*, 778 F.3d at 650 (holding that courts review the ALJ's opinion as a whole, that an ALJ need not duplicate his reasoning at multiple steps of his analysis, and that "the ALJ's discussion at step three, when considered in light of his discussion

9

of [claimant's] RFC, sufficiently met his 'duty to articulate'"). Accordingly, the Court finds that Claimant has failed to demonstrate an error requiring remand at step three.

### C. Subjective Symptom Analysis

Claimant argues that the ALJ erred in conducting the subjective symptom analysis by relying on her failure to comply with prescribed treatment without considering the reasons for her non-compliance, improperly relying on her daily activities, and failing to account for the waxing and waning of her chronic medical impairments. [Dkt. 13 at 22-31.]

An ALJ's subjective symptom evaluation is a credibility determination entitled to special deference and will be reversed only if patently wrong. *Burmester*, 920 F.3d at 510. When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process. First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including but not limited to the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8.

In this case, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but also concluded that her statements

regarding the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record. [Dkt. 11-2 at 17.] Regarding Claimant's physical symptoms, the ALJ concluded that Claimant's "overall panoply of symptoms appears to be associated with multiple factors, including these underlying conditions, her substance abuse, and side effects of prescription medication. Objective clinical examinations support limitation to light work, but have not been consistent with the claimant's allegations that she is essentially bedbound many days." *Id.* at 19. Regarding Claimant's mental health symptoms, the ALJ concluded that "[t]he record demonstrates persistent reports of panic attacks and concentration issues, but is complicated by the claimant's substance abuse and medication-seeking behavior." *Id.* at 22. He noted medical records showing that she had been released from a behavioral health program for faking panic attacks, that she has frequently overused and abused her prescription benzodiazepines and other medications, and that she was not an accurate historian of her conditions or of her drinking and prescription drug abuse. *Id.* at 19-22 (citing Dkt. 11-8 at 53, 79, 103, 124; Dkt. 11-9 at 28-30, 114, 155; 212; 11-10 at 337, 362). He noted that Claimant engaged in a range of daily activities that included leaving the house and interacting with friends. Dkt. 11-2 at 22-23. He relied on the opinion of a psychological consultative examiner that she was able to make appropriate judgments on simple work-related decisions and mange routine changes and normal pressures in a work setting, though she may struggle with more stressful changes or work conditions. *Id.* at 23. And he relied on the opinions of state agency medical and psychological consultants who opined that she was capable of performing light work. Dkt. 11-2 at 23.

After reviewing the ALJ's opinion, the Parties' briefs, and relevant portions of the record, the Court finds that the ALJ's subjective symptom analysis was not patently wrong and does not

merit remand. SSR 16-3p provides that if a claimant "fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." 2017 WL 5180304 at *9. Of course, there are numerous reasons why a claimant may fail to comply with prescribed treatment, and for this reason an ALJ may not discredit a claimant's testimony about her subjective symptoms on the basis of gaps in care "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* Here, the ALJ considered possible reasons for Claimant's non-compliance with prescribed treatment, and those reasons included her substance use disorders, drug-seeking behavior and malingering, and grief over the death of her mother. [Dkt. 11-2 at 22-23.] Claimant is correct that the ALJ did not question her during the hearing about the reasons why she failed at times to comply with prescribed treatment, but he was not required to do so. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (explaining that SSR 16-3p "did not require the ALJ to ask Plaintiff about her failure to seek treatment. That rule provides that an ALJ must consider possible reasons for a failure to seek treatment," which the ALJ satisfied by reviewing the claimant's medical records).

Contrary to Claimant's argument, the Court finds that the ALJ properly considered her daily activities in conducting the subjective symptom analysis. While "there are limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms," such as by equating daily activities with full-time work, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) (holding that the ALJ's finding that the claimant's gardening was inconsistent with her

12

complaints of pain was reasonable).  Here, the ALJ found that Claimant's daily activities, which included driving, visiting with friends, performing household chores, and caring for her pet cat, were inconsistent with her claim that she is "essentially bedbound many days." [Dkt. 11-2 at 19.]  Claimant argues that the ALJ did not acknowledge the limitations on her daily activities, but this is not accurate, as the ALJ expressly mentioned that Claimant has difficulty remembering to complete household chores, that she gets disoriented when she goes shopping, and that she socializes with friends irregularly.  [Dkt. 11-2 at 22.]  Further, an ALJ need not list each and every limitation on a claimant's daily activities in his written opinion.  See Deborah M., 994 F.3d at 791  ("[T]he ALJ's failure to mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal.").  Ultimately, the ALJ considered Claimant's daily activities as one factor among many in conducting the subjective symptom analysis.  He acknowledged certain limitations on her daily activities and did not equate those daily activities with the demands of full-time work.  Given the substantial deference owed to an ALJ's credibility determination, the Court finds that the ALJ did not err by considering Claimant's daily activities in conducting the subjective symptom analysis.

Finally, the Court finds that the ALJ did not err by failing to account for the waxing and waning of Claimant's chronic medical conditions.  Claimant is correct that chronic medical conditions, particularly conditions impacting mental health, often wax and wane, with patients experiencing difficult periods and comparatively easier periods over time.  See Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (noting that "symptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression").  But Claimant does not show that the ALJ made such an error in this case.  To the contrary, he expressly noted that her medical records showed that her condition waxed and waned over time.  See [Dkt. 11-2 at 20-21 (citing

13

Dkt. 11-7 at 11 (Jan. 2020 reported not doing well physically, exacerbating her mental health issues); *id.* at 76 (June 2020 reported doing better and taking medications as prescribed); *id.* at 87 (Jan. 2021 reported she was not doing well and admitted to alcohol relapses and pancreatitis episodes)).] Accordingly, the Court discerns no error in this respect.

In sum, the Court finds that the ALJ considered Claimant's reasons for failing to comply with prescribed treatment, appropriately considered her daily activities, and accounted for the waxing and waning of her chronic medical conditions. Accordingly, Claimant has not demonstrated reversible error with respect to her subjective symptom analysis.

### D. RFC

Claimant argues that the ALJ erred by failing to account for limitations engaging with the public in formulating her RFC and that he compounded this error by failing to include limitations in interacting with the public in the hypotheticals to the Vocational Expert ("VE"). [Dkt. 13 at 16, 20-21.] The Commissioner responds that the psychological experts who evaluated Claimant (the consultative psychological examiner and the state agency psychologist) also did not include any functional work limitations on her ability to interact with the public. [Dkt. 15 at 11 (citing Dkt. 11-3 at 14-17; Dkt. 11-9 at 89).] In her reply, Claimant does not respond directly to the Commissioner's argument with respect to the opinions of the psychological experts but stands by her position that the ALJ should have included limitations engaging with the public due to her history of agoraphobia with panic disorder. [Dkt. 16.]

Having considered the Parties' arguments, the Court agrees with the Commissioner. The state agency psychologist opined that Claimant had a mild limitation interacting with others and was "able to respond appropriately to brief supervision and interactions with coworkers and work situations[.]" [Dkt. 11-3 at 14-17.] The ALJ found this opinion persuasive and

14

incorporated it into both his step three analysis and the RFC. [Dkt. 11-2 at 15-16, 23.] The consultative psychological examiner opined that Claimant "demonstrated intact communication skills and was able to adequately engage in conversation. Claimant was observed to be able to interact appropriately with others (i.e., this examiner)." [Dkt. 11-9 at 89.] Contrary to Claimant's argument, the Court finds that the ALJ did not "play doctor" and instead relied on the expert opinions of two psychologists in assessing Claimant's RFC. Further, the ALJ fully incorporated Claimant's limitation on interacting with others in his hypothetical to the VE, and the Court therefore discerns no error in that respect, either. [Dkt. 11-2 at 73-74].

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is **AFFIRMED**.

SO ORDERED.

Dated: 12 MAR 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email